**SO ORDERED.**

**DONE and SIGNED March 28, 2019.**



_____
**JOHN S. HODGE**
**UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case Number: 18-11439 |
| | § | |
| Kelly Ann Stephenson | § | Chapter 13 |
| | § | |
| Debtor | § | |

## Memorandum of Decision

This case presents two questions arising from claim objections. First, whether an unsecured claim for contract-based attorneys' fees should be reduced where the objecting party argued the fees were unreasonable. Second, whether claims subject to a three-year liberative prescription should be disallowed where the debts were acknowledged by Debtor in a prior bankruptcy filed less than three years before the commencement of this case. For the reasons set forth below, the Court denies each of the objections.

**I.** **Jurisdiction, Venue, Core Status and Authority to Enter Final Order**

This Court has jurisdiction over the objections pursuant to 28 U.S.C. § 1334

and by virtue of the reference by the district court pursuant to 28 U.S.C. § 157(a) and LR 83.4.1. Venue is proper pursuant to 28 U.S.C. § 1408. All claims presented to this Court are "core" pursuant to 28 U.S.C. § 157 (b)(2)(A) and (B).

This Court has an independent duty to evaluate whether it has the constitutional authority to enter a final order. The Supreme Court's ruling in *Stern v. Marshall,* 564 U.S. 462 (2011), sets forth certain limitations on the constitutional authority of bankruptcy courts to enter final orders. *BP RE, L.P. v. RML Waxahachie Dodge, L.L.C.,* 735 F.3d 279, 286 (5th Cir. 2013) (" 'the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process.' ") (quoting *Stern,* 564 U.S. at 499). Thus, under *Stern*, in addition to determining whether each claim is core or non-core, this Court must also determine whether the underlying issue "stems from the bankruptcy itself or it would necessarily be resolved in the claims allowance process." *BP RE,* 735 F.3d at 286. Absent both statutory and constitutional authority, this Court may not enter a final order, and instead must issue proposed findings of fact and conclusions of law to be considered by the district court.

In this case, the matters before the Court involve the claim resolution process as the objections challenge the validity and amounts of the proofs of claims at issue. This case is far different than the matter presented in *Stern* where the court was confronted with the resolution of a counterclaim that was "not resolved by in the process of ruling on a creditor's proof of claim." *Stern*, 564 U.S. at 503. Although resolution of the claim objections in this case will require application of state law, the

matters before the Court arise from an express provision of the Bankruptcy Code and an express Bankruptcy Rule: § 502(a) and Bankruptcy Rule 3007. Moreover, unlike *Stern*, application of the state law to this provision will resolve the validity or invalidity of the claims. Accordingly, this Court finds that it is constitutionally authorized to enter a final order on the claim objections. *In re Rodriguez*, 567 B.R. 275, 278 (Bankr. S.D. Tex. 2017) ("As the allowance of a claim is a quintessential issue in bankruptcy law, this Court possesses the necessary constitutional authority to enter a final order in this matter.").

## II. Findings of Fact

This Court makes the following findings of fact pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure, which incorporates Rule 52 of the Federal Rules of Civil Procedure. To the extent that any finding of fact constitutes a conclusion of law, it is adopted as such.

The facts, in pertinent part, are as follows:

1. On September 11, 2018, Kelly Ann Stephenson ("**Debtor**") commenced this case by filing a voluntary petition pursuant to Chapter 13 of the Bankruptcy Code (Doc. 1).

2. This is Debtor's fourth bankruptcy case.[1] The other cases were filed in

---

[1] A court may take judicial notice of the record in prior related proceedings and draw reasonable inferences therefrom. *Gray ex rel. Rudd v. Beverly Enterprises-Mississippi, Inc.*, 390 F.3d 400 (5th Cir. 2004) (court may take judicial notice of actions by or in another court). See also *In re E.R. Fegert, Inc.*, 887 F.2d 955, 957–58 (9thCir. 1989) ("It is well-settled that court documents from the underlying bankruptcy case are subject to judicial notice in related adversary proceedings and related district court litigation"). *Joseph v. Bach & Wasserman, L.L.C.*, 487 Fed. Appx. 173, 178 (5th Cir. 2012) ("[T]he court may take judicial notice of matters of public record.") (citing *Funk v. Stryker Corp.*, 631 F.3d 777 (5th Cir. 2011).

this Court on July 3, 2001 (Chapter 7 case, No. 01-12042), March 18, 2015, (Chapter 13, Case No. 15-10498) and November 9, 2015 (Chapter 13, Case No. 15-12085).

      3.      Ford Motor Credit, LLC ("**Ford**") filed a proof of claim in each Chapter 13 case filed by Debtor, as follows:

      a.      Case No. 15-10498, Claim No. 3, in the amount of $21,752.49, secured by 2011 Ford Edge;

      b.      Case No. 15-12085, Claim No. 5, in the amount of $23,073.74, secured by 2011 Ford Edge; and

      c.      Case No. 18-11439, Claim No. 5, in the amount of $22,506.64. This claim was filed as an unsecured claim seeking recovery for a deficiency balance owed after the vehicle was recovered by Ford and sold at a commercially reasonable sale.

      4.      The record in each Chapter 13 case filed by Debtor indicates that Ford used the services of a lawyer to:

      a.      File a proof of claim in each case as noted above;

      b.      File a notice of appearance in Case No. 15-10498 (Doc. 25) and Case No. 15-12085 (Doc. 32);

      c.      File an objection to Debtor's Plan in Case No. 15-10498 (Doc 27);

      d.      File a motion to abandon and/or motion to lift the automatic stay in Case No. 15-12085 (Doc. 33);

      e.      File a proposed order granting adequate protection for Debtor's use of Ford's collateral in Case No. 15-12085 (Doc. 43);

      f.      Prepare a "Reschedule of Payments Agreement." See, Case No. 18-

11439, Claim 5, p. 5, ¶ III, pp. 10-11;

      g.      Prepare and file a lawsuit in state court against Debtor for the recovery of a deficiency judgment for all sums owed on the vehicle after it was recovered and sold at a commercially reasonable sale for $6,000.00. Case No. 18-11439, Claim 5, pp. 5-7, ¶¶ VI, VII; and

      h.      Prepare and file discovery requests in the state court lawsuit. Case No. 18-11439, Claim 5, p. 7.

      5.      In this bankruptcy case, Ford filed a proof of claim using Official Form 410, and attached copies of: (i) a summary page on a lawyer's letterhead which itemizes the amounts sought, (ii) the petition filed in the state court lawsuit, (iii) discovery requests propounded in the state court lawsuit, (iv) the Louisiana Vehicle Retail Installment Contract, (v) the Reschedule of Payments Agreement, and (vi) the Notice of Sheriff Returns filed in the state court lawsuit. Claim 5.

      6.      Cavalry SPV I, LLC ("**Cavalry**"), as assignee of Capital One Bank (USA), N.A./Direct Merchants Bank, filed Claim 2 in this bankruptcy case. The Claim was filed using Official Form 410. The Claim attaches sufficient evidence of the transfer of the claim from Capital One to Cavalry. The Claim indicates that the last payment date was on 09/17/2014. The Claim attaches a copy of an account statement. The Claim is in the amount of $455.04.

      7.      Cavalry SPV I, LLC, as assignee of Capital One Bank (USA), N.A. filed Claim 3 in this bankruptcy case. The Claim was filed using Official Form 410. The Claim attaches sufficient evidence of the transfer of the claim from Capital One to

Cavalry. The Claim indicates that the last payment date was on 07/23/2014. The Claim attaches a copy of an account statement. The Claim is in the amount of $2,709.31.

8. In her 2nd and 3rd bankruptcy cases, Debtor listed the claims of Capital One Bank and/or Cavalry in the amounts of $2,709.00 and $455.00 in Schedule F of her Schedules of Liabilities filed pursuant to § 521(a)(1) of the Bankruptcy Code and Bankruptcy Rule 1007(b). (Case No. 15-10498, Doc.1, p.31-32; Case No. 15-12085, Doc.1, p.17). Debtor did not identify any of her debts in Schedule F as disputed, contingent or unliquidated. Debtor signed a declaration under penalty of perjury acknowledging the accuracy of Schedule F.

9. Prior to the commencement of the current bankruptcy case, Debtor's last known acknowledgment of her debts owed to Capital One Bank and/or Cavalry was on November 9, 2015, the date Schedule F was filed in Case No. 15-12085.

### III. Conclusions of Law and Analysis

This Court makes the following conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure. To the extent that any conclusion of law constitutes a finding of fact, it is adopted as such.

#### A. Legal Standards for Allowance of, and Objection to, Claims

A court may sustain an objection to a proof of claim only if it complies with § 502 of the Bankruptcy Code. Objections must be based upon one of nine (9) specific statutory grounds:

> (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such

claim is contingent or unmatured;
(2) such claim is for unmatured interest;
(3) if such claim is for a tax assessed against property of the estate, such claim exceeds the value of the interest of the estate in such property;
(4) if such claim is for service of an insider or attorney of the debtor, such claim exceeds the reasonable value of such services;
(5) such claim is for a debt that is unmatured on the date of the filing of the petition and that is excepted from discharge under section 523(a)(5) of this title;
(6) if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property…;
(7) if such claim is the claim of an employee for damages resulting from the termination of an employment contract...;
(8) such claim results from a reduction, due to late payment, in the amount of an otherwise applicable credit available to the debtor in connection with an employment tax on wages, salaries, or commissions earned from the debtor; or
(9) proof of such claim is not timely filed….

11 U.S.C. § 502(b).

A proof of claim is deemed allowed unless a party in interest objects to the claim. 11 U.S.C. § 502(a). Additionally, if the proof of claim is executed and filed in accordance with the bankruptcy rules, it is considered *prima facie* evidence of the validity and amount of the claim. Fed. Rule Bankr.P. 3001(f). *Jacobsen v. Sramek*, 362 Fed. Appx. 413, 415 (5th Cir. 2010) ("a party correctly filing a proof of claim is deemed to have established a *prima facie* case against Debtor's assets."). The burden of proof then shifts to the objecting party to prove one of the nine exceptions set forth in § 502(b) of the bankruptcy code. 11 U.S.C. § 502(b)(1)-(9). The nine statutory exceptions set forth in § 502(b) constitute the exclusive grounds to object to a claim. *In re Brunson*, 486 B.R. 759, 763–64 (Bankr. N.D. Tex. 2013) (collecting cases and concluding that this view is the "majority view."). In other words, unless one of the grounds for disallowance provided by § 502(b)(1)–(9) applies, the Court ***must*** allow

the claim. Even if the claimant was not entitled to *prima facie* evidence of the claim, the proof of claim would still be some evidence of the claimant's claim. In that case, the objecting party must come forward with "some evidence to meet, overcome, or at least equalize the statements on the proof of claim." *In re Muller*, 479 B.R. 508, 514 (Bankr. W.D. Ark. 2012) (internal citations omitted). In either case, if the objecting party presents evidence sufficient to support the objection to the claim, "the ultimate burden of persuasion would have shifted to the [c]laimant to establish its entitlement to the claims." *In re Pioneer Carriers, LLC*, 583 B.R. 891, 898–99 (Bankr. S.D. Tex. 2018) ("To successfully object to a claim, the debtor must present sufficient evidence to overcome the *prima facie* validity of the claim. If evidence rebutting the claim is brought forth, then the claimant must produce additional evidence to prove the validity of the claim by a preponderance of the evidence.") (internal quotations and citations omitted). *In re Armstrong*, 320 B.R. 97, 104 (Bankr. N.D. Tex. 2005) ("If the objecting party meets these evidentiary requirements, then the burden of going forward with the evidence shifts back to the claimant to sustain its ultimate burden of persuasion to establish the validity and amount of the claim by a preponderance of the evidence.").

**B. <u>Section 502(b) does not preclude the allowance of Ford's claim.</u>**

Ford's proof of claim included $4,402.86 for attorneys' fees. Debtor objected, arguing that "reasonable [attorneys'] fee should be limited to $750" (Doc. 30, ¶ 5). Debtor's objection is based ***solely*** on the fact that Ford did not obtain a judgment against her and no court has awarded attorneys' fees to Ford. (Doc. 30, ¶ 4). Simply

put, such grounds are insufficient to support an objection to attorneys' fees claimed by a creditor. Instead, the objection to Ford's claim, like the objection to any claim, must be based exclusively on § 502(b) of the Bankruptcy Code which provides that a court is to determine the amount of a claim "as of the date of the filing of the petition" and "shall allow" a claim "except to the extent that" it implicates any of the nine exceptions enumerated in § 502(b).

It is incumbent upon an objecting party to point out which statutory exception is triggered by §§ 502(b)(1)-(9). Here, Debtor failed to identify ***any*** statutory basis for her objection. Thus, it is up to the Court to determine which, if any, of the nine statutory exceptions apply. Beyond doubt, the exceptions found in §§ 502(b)(2)-(8) are inapplicable because Ford's claim for attorneys' fees has nothing to do with unmatured interest, property tax, services provided by an attorney of the debtor, child support or alimony, damages resulting from the termination of a lease or employment contract, or the late payment of any employment tax. Likewise, the exception found in § 502(b)(9) is inapplicable because the claim was timely filed. Accordingly, Ford's claim must be allowed under § 502(b) unless it is unenforceable within the meaning of § 502(b)(1) (i.e. the claim is "unenforceable against the debtor ... under any agreement or applicable law").

According to the Supreme Court, a creditor is permitted to include attorneys' fees as part of its proof of claim if it had an enforceable right under applicable state law to collect the fees. *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 452–53, 127 S. Ct. 1199, 1206 (2007) ("we generally presume that claims

enforceable under applicable state law will be allowed in bankruptcy unless they are expressly disallowed."). In *Travelers,* the bankruptcy court had followed the Ninth Circuit's holding in *Fobian v. W. Farm Credit Bank (In re Fobian),* 951 F.2d 1149 (9th Cir. 1991), that creditors could not recover attorneys' fees for litigating issues particular to bankruptcy law and disallowed the claim for such fees by Travelers. The district court and the Ninth Circuit affirmed. The Supreme Court reversed to the extent the claim was disallowed on this ground, overruling *Fobian.*

Absent unenforceability, there is no statutory exception within § 502(b) which would limit the collection of attorneys' fees by a creditor. In this case, Ford is entitled to the full amount of its contract-based attorneys' fees because it had a valid and enforceable right under Louisiana law to collect attorneys' fees from Debtor.

The Vehicle Retail Installment Contract provides that it is governed by Louisiana law. Under Louisiana law, a party may recover attorneys' fees from an opposing party only in two specific circumstances: (1) where there is a contract between the disputing parties that explicitly requires the payment of the attorneys' fees incurred by the opposing party, or (2) where a specific Louisiana statute requires the payment of the opposing party's attorneys' fees. *Langley v. Petro Star Corp. of La.*, 2001-0198 (La. 6/29/01), 792 So. 2d 721, 723 ("As a general rule, attorney fees are not allowed in Louisiana unless they are authorized by statute or provided for by contract.").

Because there is no specific Louisiana statute which requires a borrower to pay a vehicle lender's attorneys' fees, this dispute turns upon the enforceability of the

attorneys' fee provision contained in the Vehicle Retail Installment Contract. In Louisiana, "contracts have the force of law between the parties, and the courts are bound to interpret them according to the common intent of the parties." *Cox Commc'ns v. Tommy Bowman Roofing, L.L.C.*, 2004-1666, p. 3 (La. App. 4 Cir. 3/15/06), 929 So.2d 161, 164 (citing La. Civ. Code arts. 1983 and 2045). Moreover, Louisiana law expressly permits parties to enter into contracts providing for the award of attorneys' fees. La. Civ. Code art. 2000 provides that "[i]f the parties, by written contract, have expressly agreed that the obligor shall also be liable for the obligee's attorney fees in a fixed or determinable amount, the obligee is entitled to that amount as well."

The issue of whether a court may inquire into the reasonableness of attorneys' fees, even though stipulated to by the parties, was settled by the Louisiana Supreme Court long ago in *Central Progressive Bank v. Bradley,* 502 So.2d 1017 (La. 1987) ("Notwithstanding art. 2000, the courts may inquire into the reasonableness of such a fee."). Here, the relevant contractual provisions are found in ¶¶ K, L, and O, which state:

> **K. Disposition of Motor Vehicle:** If the vehicle is taken back and sold, the money from the sale, less allowed expenses, will be used to pay amount still owed on the contract. Allowed expenses include those paid as a direct result of having to retake the vehicle, hold it, prepare it for sale, and sell it. *Reasonable lawyer's fees not to exceed 25% of the total amount payable and legal costs are allowed, too.* If there is any money left a (surplus), it will be paid to you. If the money from the sale is not enough to pay off this contract and costs, you will pay what is still owed to the Creditor. If you do not pay this amount when the Creditor asks, the Creditor may charge you interest at the highest lawful rate until you pay."

> **L. Collection Costs**: Except as otherwise provided by law, you must pay any and all expenses related to enforcing this contract, *including collection expenses, lawyer's fees not to exceed 25% of the total amount payable*, and other legal expenses.
>
> **O. Applicable Law:** You agree that this contract will be governed by the laws of the state of Louisiana.

Claim 1, p.8 (emphasis added); *see also*, Claim 3-1 filed in Case No. 15-10498.

In addition to the reasonableness requirement imposed by Louisiana law, ¶ K of the contract imposes its own reasonableness requirement for recovery of contractual attorneys' fees, subject to a cap of twenty-five percent (25%) of the total amount payable. The Louisiana Supreme Court adopted a ten (10) factor test to consider when determining reasonableness of attorneys' fees: (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) amount of money involved; (5) extent and character of the work performed; (6) legal knowledge, attainment, and skill of the attorneys; (7) number of appearances made; (8) intricacies of the facts involved; (9) diligence and skill of counsel; and (10) the court's own knowledge.[2] *State, Dept. of Transp. and Dev. v. Williamson*, 597 So.2d 439, 442 (La.1992).

---

[2] These factors are derived from Rule 1.5(a) of the Rules of Professional Conduct, which provides:
(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
   (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
   (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
   (3) The fee customarily charged in the locality for similar legal services;
   (4) The amount involved and the results obtained;
   (5) The time limitations imposed by the client or by the circumstances;
   (6) The nature and length of the professional relationship with the client;
   (7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and
   (8) Whether the fee is fixed or contingent.

In this case, other than proving that Ford did not obtain a judgment against Debtor and that no court has awarded attorneys' fees to Ford, Debtor failed to present ***any*** evidence to suggest that the attorneys' fees stated in the proof of claim are invalid or unreasonable. Contrary to the assertions of Debtor, the attorneys' fees provision is not triggered solely in instances where a court awards fees or solely when the creditor obtains a judgment against Debtor. Instead, the contractual provisions at issue require Debtor to pay reasonable attorneys' fees in the event the creditor is required to use the services of a lawyer to enforce the contract.

This is not a case involving an overactive creditor which unfairly ran up legal fees. Rather, this is a case where a creditor was required to use the services of an attorney to enforce the terms of the contract and to protect its interests in multiple bankruptcy proceedings. Debtor's proposed cap of $750.00 on attorneys' fees is not based on any provision in the contract. Moreover, the proposed limit on attorneys' fees appears to be a wholly arbitrary amount.

As a matter of law, Ford's proof of claim constitutes *prima facie* evidence of the validity and amount of its claim as it was undoubtedly executed and filed in accordance with the bankruptcy rules. Bankruptcy Rule 3001(f). The proof of claim was filed using Official Form 410 and it attached all supporting documents required by the Official Form. Therefore, as the objecting party, Debtor had the initial burden of presenting evidence disputing the validity or amount of the claim. *See In re JAG Const. Servs., Inc.*, No. 12-51014, 2013 WL 3760113, at *2 (Bankr. W.D. La. July 16, 2013) (Summerhays, J.). Debtor failed to satisfy her burden and therefore failed to

rebut the presumption of validity of Ford's attorneys' fees.

Even if Debtor had rebutted the presumption of validity of Ford's claim, this Court finds the attorneys' fees at issue are reasonable. The Court reached its determination of the reasonableness of the fees by reviewing the record of the prior bankruptcy cases as well as the record of this case. Those records clearly establish that Ford's attorneys rendered significant services. Moreover, the amount of the attorneys' fee at issue is within its contractually mandated bounds, not exceeding "twenty-five percent [25%] of the total amount payable, and other legal expenses." In determining the reasonableness of attorneys' fees, Louisiana courts have held "[a] reasonable attorney's fee is decided on a case-by-case basis and a court does not have to hear evidence concerning time spent or hourly rates charged in order to make an award since the record will reflect much of the services rendered" *Burgess v. Shi Gang Zheng*, 2017-0665 (La. App. 4 Cir. 10/10/18), 257 So. 3d 764, 775–76 (internal quotations and citations omitted). Thus, it is not necessary for this Court to review the billing records of Ford's attorneys to determine the reasonableness of the fees.

If this Court were to reduce Ford's claim, not only would it undermine the validity of contracts, it would upset a basic principle of federal bankruptcy law: "that state law governs the substance of claims, Congress having generally left the determination of property rights in the assets of a bankrupt's estate to state law," *Travelers*, 549 U.S. at 450–51, 127 S.Ct. 1199 (internal quotation marks omitted). Allowing creditors, like Ford, who have bargained specifically for attorneys' fees under state law to enforce those rights in bankruptcy is fully consistent with that

principle. Those creditors, it is presumed, "gave value, in the form of a contract term favorable to the debtor ... in exchange for the [attorneys' fees] provision." *SummitBridge Nat'l Investments III, LLC v. Faison*, 915 F.3d 288, 296 (4th Cir. 2019) (citations and internal quotation marks omitted). Allowing such creditors to assert unsecured claims for those fees, simply "effectuates the bargained-for terms of the loan contract." *Id.* (internal quotation marks omitted).

### C. <u>Section 502(b) does not preclude the allowance of Cavalry's claims.</u>

Debtor objected to Claim Nos. 2 and 3 filed by Cavalry, asserting they are time-barred and, thus, should be disallowed under § 502(b)(1) of the Bankruptcy Code. In her objection, Debtor notes that these claims arose from "open accounts" within the meaning of La. R.S. 9:2781(D) and are subject to a three-year liberative prescription period. La. Civil Code art. 3494(4). Debtor asserts these Claims are time-barred or prescribed under Louisiana law because the last transaction date was more than three (3) years prior to the commencement of this case. Debtor, however, neglected to point out that she acknowledged these debts in her prior bankruptcy case by listing them in her schedule of debts. Because the prior bankruptcy case was less than three (3) years from the current case, the claims have not prescribed under Louisiana law.

It is well established law in Louisiana that "[a]cknowledgment of a debt will interrupt the course of prescription." *Succession of Slaughter*, 108 La. 492, 32 So. 379 (1902). La Civ.Code art. 3464 provides: "prescription is interrupted when one acknowledges the right of the person against whom he had commenced to prescribe." "Prescription commences to run anew from the last day of interruption." La. Civ.Code

art. 3466. The Louisiana Supreme Court has held that listing debt in bankruptcy schedules is sufficient acknowledgment to interrupt prescription. *See Meridian Fertilizer Factory v. Collier,* 193 La. 815, 820, 192 So. 358, 360 (1939) ("the listing of this debt on the schedule of debts owed by Collier Brothers was a sufficient acknowledgment to interrupt the prescription. Analogous cases are those in which it has been held that a listing of the debts of a succession by an executor or an administrator is a sufficient acknowledgment to interrupt prescription."); *see also Chalkey v. Pellerin,* 186 So. 382, 383 (La.App. 1 Cir.1939) ("[the court] can hardly conceive of a more certain, definite and conclusive intention on the part of a debtor to acknowledge the right of a creditor than to place on a sworn schedule of his liabilities the name of the creditor and the amount and nature of the debt due him.").

The United States District Court for this district confronted a similar issue in determining whether a suit on a promissory note was time-barred pursuant to 28 U.S.C. § 2415(a) which prohibits the federal government or its agencies from filing suit after six years from the date the right of action accrues. *LPP Mortg. Ltd. v. Cathey*, No. CIV.A. 04-2031, 2006 WL 1476026 (W.D. La. May 23, 2006). In that case, an assignee of a federal agency sought to collect a promissory note from the maker and guarantor. The maker and guarantor claimed the debt was unenforceable under federal law because right of action to enforce the note accrued more than six years prior to the filing of the lawsuit and thus the note was longer enforceable under 28 U.S.C. § 2415(a). The federal statute, however, expressly provides that in the event a debtor provides written acknowledgment of debt, the right of action shall be deemed

to accrue again at the time of such acknowledgment. The district court held that the maker and guarantor each provided written acknowledgment of their debt when they filed Chapter 11 bankruptcy petitions and listed the debts in their respective Schedule D and in their respective Disclosure Statements. The court held that the six-year time period to file suit was interrupted and began to run anew each time the maker and guarantor acknowledged their debts in their Chapter 11 bankruptcy proceedings. The maker and guarantors each acknowledged their debt in their bankruptcy disclosure statements filed on February 3, 1999. Thus, the six-year statute of limitations began to run anew on February 3, 1999. Because suit was filed on September 30, 2004, it was within the 6-year statute of limitation period. In footnote 3, the district court stated: "Louisiana law is identical to § 2415(a)" and cited Louisiana cases holding that acknowledgment of debt in a bankruptcy proceeding interrupts prescription. *Id.* at n.3.

In her prior bankruptcy case (Case No. 15-12085), Debtor unequivocally acknowledged the debts owed to Cavalry when she listed them in Schedule F, filed on November 9, 2015 (Doc. 1, p.17). This interrupted the liberative prescription period, and the period began to run anew. The current case was filed on September 11, 2018, which is within three years of the date of the interruption of the liberative prescription period. Applying Louisiana law, this Court holds that the debts owed to Cavalry have not prescribed.

## IV. Conclusion

For the reasons stated herein, the Court **OVERRULES** the objections filed by Debtor to: (1) Claim No. 5 filed by Ford Motor Credit Company, LLC, (2) Claim No. 2 filed by Cavalry SPV I, LLC as assignee of Capital One Bank (USA), N.A./Direct Merchants Bank and (3) Claim No. 3 filed by Cavalry SPV I, LLC as assignee of Capital One Bank (USA), N.A.

Each Claim is allowed as filed. A separate order overruling the objections to claims will be entered.

###